[Crim. No. 719.   Third Appellate District.—October 19, 1923.]

## THE PEOPLE, Respondent, v. STEVE FRANKOVICH et al., Appellants.

[1] WRIGHT ACT—ENACTMENT—MODE OF—NONVIOLATION OF CONSTITU-
TION.—The Wright Act, which adopts by reference all the penal
provisions of the law enacted by Congress for the enforcement of
the terms of the eighteenth amendment to the federal constitution,
is not obnoxious to the objection that the method of its enact-
ment was contrary to section 24 of article IV of the state con-
stitution, which provides, "No law shall be revised or amended
by reference to its title; but in such case the act revised or
section amended shall be re-enacted and published at length as
revised or amended."

[2] CRIMINAL LAW—MOTION IN ARREST OF JUDGMENT—ATTACK ON IN-
FORMATION—WAIVER BY FAILURE TO DEMUR.—Except in so far
as a motion in arrest of judgment may involve an attack upon the
information on the ground that it does not state a public offense,
any defects therein are waived by the failure to demur.

[3] ID.—VIOLATION OF WRIGHT ACT—COMMON NUISANCE—PLEADING—
SUFFICIENCY OF INFORMATION.—An information charging the crime
of maintaining a common nuisance, as said offense is defined by
section 21 of the Wright Act, is sufficient where it is substan-
tially in the language of said section, and involves a statement
of the acts constituting the offense denounced by said section "in
such manner as to enable a person of common understanding to
know what is intended."

[4] ID.—VERDICT—EVIDENCE.—In a prosecution under the Wright Act
for maintaining a common nuisance, to wit, a room, building,
and place at a certain location where intoxicating liquor was
kept, sold, and bartered, the verdict of guilty was sufficiently
supported by the positive testimony of the witnesses for the state
that intoxicating liquors were sold and served to them on stated
occasions at the place named in the information.

[5] ID. — ABSENCE OF INTEREST OF BARTENDER — CONDUCT OF BAR-
TENDER—SECTION 31, PENAL CODE.—In such prosecution, the con-
duct of the bartender in selling and serving intoxicating liquors
at the place mentioned and at the times charged in the informa-
tion brought him within the terms of section 31 of the Penal Code
as an aider and abetter in the commission of the crime, although

3.   Construction and effect of the Volstead Act, note, 10 A. L. R.
1553.

he was shown not to have any interest in the business or the place where it was maintained.

[6] ID.—EVIDENCE—PRIOR SALES—CHARACTER OF PLACE AND PURPOSE OF DEFENDANTS.—In such prosecution, testimony showing sales of intoxicating liquor made by the defendants at the premises informed against prior to the period of time during which the information alleged that the defendants committed the acts constituting the crime charged was admissible "not for the purpose of proving another and distinct offense from that charged, but to show the character of the place and the purpose of the defendant."

[7] ID. — EVIDENCE — POSSESSION OF INTOXICATING LIQUOR. — In such prosecution, testimony of a state's witness that within the times mentioned in the information he met one of the defendants in his auto, which contained several jugs and small barrels of intoxicating liquor, near the courthouse, to which it was shown by other evidence that said defendant was taken by an officer for the purpose of charging him with the crime of having in his possession intoxicating liquor, was admissible as tending to show or permitting the inference that said defendant, when intercepted by the officer, intended to convey the liquor to the place mentioned in the information; and it was further admissible for the purpose of showing the disposition of said defendant to engage in the sale of intoxicating liquor.

[8] ID.—INTENT—INSTRUCTION.—In such prosecution, a given instruction to the effect that intent to commit the crime charged in the information is not essential to the consummation thereof; that "all you are required to find, to reach a verdict of guilty against any defendant, is that such defendant at the time and place charged in the information maintained or aided and abetted in maintaining the place described in the information and that intoxicating liquor was either kept or sold therein," contained a correct statement of law.

APPEAL from a judgment of the Superior Court of Humboldt County and from an order denying a new trial. Denver Sevier, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. Logan Beamer for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, For Respondent.

HART, J.—The district attorney of Humboldt County filed in the superior court of said county an information accusing the defendants of the crime of maintaining a common nuisance, as said offense is defined by section 21 of the Volstead Act, as adopted by the so-called Wright Act enacted by the legislature and later approved by the people of California under the power of referendum, for the purpose of enforcing within the limits of said state the mandates of the eighteenth amendment to the federal constitution. The defendants Frankovich and White were convicted and the defendant Gutenich was acquitted by the jury of the crime so charged. Frankovich and White have removed the case to this court by an appeal from the judgment and the order denying them a new trial. They also make an attempt to appeal from the order denying their motion for an arrest of judgment. As has repeatedly been pointed out in the decisions, there is no authority for an appeal from the last-mentioned order, the points raised by a motion in arrest of judgment being reviewable on an appeal from the judgment.

The asserted failure of the information to state a public offense, alleged insufficiency of the evidence to support the verdict, and alleged errors in the court's rulings upon the question of the admissibility of certain testimony and in the giving and refusing to give certain instructions, constitute the general grounds upon which a reversal is urged.

[1]   1. The contention first made as to the alleged insufficiency of the information to state a public offense is, grounded upon the proposition that there is no law in this state specifically denouncing as a common or criminal nuisance the act of maintaining a place or house, or building, etc., where intoxicating liquor is manufactured, sold, kept, or bartered, etc. The specific contention is, in effect, that the legislature, in enacting the so-called Wright Act, violated the mandate of section 24 of article IV of our state constitution, in that by said act it merely adopted by reference all the penal provisions of the law enacted by Congress for the enforcement of the terms of the eighteenth amendment to the federal constitution. The section of the state constitution referred to reads: "No law shall be revised or amended by reference to its title; but in such case the act revised

or section amended shall be re-enacted and published at length as revised or amended.''

In the recent case of *Ex parte Burke,* 190 Cal. 326 [212 Pac. 193], the supreme court had before it the precise question now before us. In fact, the law involved in that case was the Wright Act, and the attack launched against it therein was upon exactly the same grounds as those upon which the validity of said act is questioned herein. The supreme .court held that the act was not obnoxious to the objection that the method of its enactment was contrary to section 24 of article IV of the constitution of this state, saying, among other things, that that provision of the constitution ''refers only to the revision or amendment of some law already enacted by our state legislature, and has no reference to the enactment of a new provision. The principle that laws may be enacted in that fashion,'' proceeds the court, ''is well established.. In *People* v. *Whipple,* 47 Cal. 592, it was held that it was proper for the legislature, in creating an office, to define the duties of the incumbent by reference to an existing statute and to provide that those duties shall be the same as those required by the act referred to. The principle is that such legislation may consist in readopting by its title the provisions of another act adopted by another state, or by the United States.''

It is further contended that the information is bad because it does not conform to the requirements of sections 950, 951, and 952 of the Penal Code. There was no demurrer to the information, but the objections challenging the sufficiency of the information were raised by the motion in arrest of judgment. [2] Except in so far as the said motion may involve an attack upon the information on the ground that it does not state a public offense (sec. 950, subd. 2, Pen. Code), any defects therein were waived by the failure to demur. [3] We think, however, that the information, with the requisite clearness and directness, charges the offense sought to be therein stated. It is substantially in the language of the section of the Wright Act or Volstead Act (sec. 21) upon which it is founded (see Fed. Stats. Ann., 2d ed., 1919 Supp., p. 212; U. S. Comp. Stats. Ann., Supp. 1923, sec. 10138½jj), and involves a statement of the acts constituting the offense denounced by

said section "in such manner as to enable a person of common understanding to know what is intended." (Sec. 950, subd. 2, Pen. Code.) No more is required of a criminal pleading than that "it be direct and certain, and allege all the acts and facts which the legislature has said shall constitute the offense charged." (*People* v. *Fowler*, 88 Cal. 136, 138 [25 Pac. 1110].) No language could be added to section 21 of the Volstead Act, adopted by the Wright Act, which would render its definition of the crime of maintaining a common nuisance clearer or more direct, and hence the general rule that it is sufficient if a crime be stated in an information or indictment in substantial agreement with the language of the statute applies here.

2. The contention that the verdict is devoid of sufficient evidentiary support to uphold it is without merit. The information alleges that the defendants, "on or about the 1st day of February, 1923, and on divers other dates between said 1st day of February, 1923, and the 22d day of March, 1923," did "maintain a common nuisance, to wit: a room, building and place, at No. 238 Second Street, in the City of Eureka, said County and State, where intoxicating liquor, to wit: whiskey and brandy, was kept, sold and bartered," etc. The defendant, Frankovich, admitted that he was the owner of the business—ostensibly that of dispensing "soft drinks"—carried on at 238 Second Street, in the city of Eureka, and the lessee of said place, and that he had been such owner and lessee and conducted said business continuously from some date in the month of June, 1922, down to the date upon which the information herein was filed, to wit, April 17, 1923; that the defendant, White, during the months of January, February, and March, 1923, was employed by him as a barkeeper at said place, and during all of said time worked therein in that capacity. Some eight or ten witnesses—most of them in the employ of the district attorney and engaged in the investigation of "bootlegging" and the apprehension of "bootleggers" prosecuting their illicit activities in Humboldt County and the city of Eureka —positively testified that on many different occasions in the months of January, February, and March, 1923, and prior to the date of the filing of the information herein, they purchased, were served with and drank whisky and

"jackass" brandy in the said place; that the defendant White, so some of these witnesses declared, waited on and served them with intoxicating liquors on some of the occasions referred to; that the price paid by them for the liquor so sold and served to them was twenty-five cents a drink. These witnesses generally visited the place and purchased the liquor in pairs—on some of the occasions more than two would appear together in the saloon and obtain intoxicating liquor there. Corroborative of the testimony of these witnesses was the fact that the room in which intoxicating liquors were dispensed had been arranged with the evident purpose of evading detection by the public authorities of the unlawful traffic, or so that it could be carried on with as little probability or likelihood of detection as possible. The testimony shows that the main room or the room into which customers or other persons ordinarily entered the place from the street or sidewalk and the "back room" or the room in which the prohibited liquors were kept and sold were divided by a partition. There was a door between the rooms, and to the latch thereof was attached a string which was long enough to extend to a point behind the bar. This string could be so manipulated by the man behind the bar "as to cause the door to open." Two "peep-holes" were in the wall or partition, and through them the barkeeper could look (and it was shown he was often seen to look) into the main room and so ascertain the identity of the persons who had entered therein from the street or sidewalk. Manifestly, an inference which might reasonably be deduced from such an arrangement of the place, when considered in connection with the other facts, was that the defendant Frankovich deliberately planned preparation for the surreptitious prosecution of bootlegging activities in his "soft-drink" establishment. [4] But, regardless of the probative value of these physical facts, or the weight attached to them by the jury, it is plainly true that the positive testimony of the witnesses for the state that intoxicating liquors were sold and served to them on the occasions mentioned by them at Frankovich's place of business affords ample support to the verdict.

[5] It is vigorously urged, however, that, even if the verdict is sufficiently buttressed as to the defendant Franko-

vich, there is a palpable insufficiency of proof of the guilt of the defendant White of the crime charged. This proposition seems to be inspired by the fact that the evidence, without conflict, shows that White was not an owner or part owner of the establishment, or, in other words, shows that said defendant had no interest of any kind or character in the business or the place where it was maintained. The argument from this hypothesis is that, unless it be true or is shown that a party is interested as an owner in the unlawful business, he cannot justly or legally be convicted under the statute of the crime here charged, notwithstanding that, as an employee, he may have assisted the owner in conducting the business of selling the contraband liquors, or in the doing of the acts constituting the crime here charged. The proposition cannot be sustained upon any consideration either of logic or the law of this state. The established rule in this state is that any person who aids and abets in the commission of a crime, whether it be a felony or misdemeanor, is a principal in the crime so committed. (Pen. Code, sec. 31.) In this case there is, as seen, positive evidence that White personally, in his capacity of barkeeper for Frankovich, during the period of time or between the dates mentioned in the information, sold and served intoxicating liquors at No. 238 Second Street, the place of business of the latter. This conduct brought him as clearly within the terms of section 31 of the Penal Code as would the act or acts of a party in aiding and abetting in the commission of any other offense known to the law.

[6] 3. There are but two of the rulings affecting the question of the legal propriety of certain testimony which merit special attention herein. The first of these assignments involves the objection that error was committed by the allowance of testimony showing sales of intoxicating liquor made by the defendants at 238 Second Street prior to the period of time during which the information alleges that the defendants committed the acts constituting the crime charged. The testimony was admissible "not for the purpose of proving another and distinct offense from that charged, but to show the character of the place and the purpose of the defendant." (*People* v. *Pera,* 36 Cal. App. 292, 302 [171 Pac. 1091, 1095] ; *People* v. *Macy,* 43 Cal. App. 479,

483 [184 Pac. 1008]. See, also, *People* v. *Cavallini,* 29 Cal. App. 526, 531 [156 Pac. 73] ; *Lawson et al.* v. *State,* 20 Ala. 65 [56 Am. Dec. 182] ; *State* v. *Snover,* 64 N. J. L. 65 [44 Atl. 850].) **[7]** The second assignment under the present head arises out of the testimony of the state's witness, McKay, that, on the ninth day of February, 1923, he met the defendant Frankovich in his auto near the courthouse, in Eureka, and that at that time the said defendant had in his car several jugs and small barrels containing intoxicating liquor. The objection to this testimony was and is that it revealed an entirely different crime from the one charged, and for that reason was irrelevant to this case and prejudicial to the defendants. It appears that, on the 9th of February, and a short time prior to the appearance of said defendant near the courthouse, an attaché of the district attorney's office met Frankovich in his automobile on a country road while the latter was driving toward and approaching Eureka; that the officer stopped Frankovich and discovered in his auto the thirty-five gallons of liquor referred to by the witness, McKay; that the officer thereupon took the defendant into custody and to the justice's court, at the county courthouse, for the purpose of charging him with the crime of having in his possession intoxicating liquors; that it was at this time and place that the witness, McKay, saw the said defendant and also the vessels containing the thirty-five gallons of liquor in his car. The testimony, in so far at least as Frankovich was concerned, was proper. The circumstance to which it related occurred between the 1st of February and the 22d of March, 1923, which embraced the period of time during which the defendants were accused of committing the acts constituting the crime charged in the information. It tended to show, or, at any rate, the jury could well have so inferred therefrom, that Frankovich, when intercepted on the road by the officer, intended to convey the liquor to his place at 238 Second Street and there keep or sell it. It was not made to appear that there was any other place in Eureka to which he could have taken or intended to take the liquor. Moreover, under the cases above cited, it was admissible for the purpose of showing the disposition of Frankovich to engage in the sale of intoxicating liquors, and this would be a circumstance cor-

roborative of the testimony showing that he did have in his possession and was engaged in the business of selling intoxicating liquors at 238 Second Street during the times mentioned in the information.

4. There are too many specifications of error in the giving and the refusal to give certain instructions to justify an attempt to give each special notice herein. Indeed, we perceive no necessity for doing so. [8] There is, however, one of the given instructions of which the defendants complain, contending that it involves a misstatement of the law, the objection to which will be specially considered. It is to the effect that intent to commit the crime charged in the information is not essential to the consummation thereof; that "all you are required to find, to reach a verdict of guilty against any defendant, is that such defendant at the time and place charged in the information maintained or aided and abetted in maintaining the place described in the information and that intoxicating liquor was either kept or sold therein." The instruction, in so far as it involves the statement of a legal proposition, and as applied to the class of cases to which the instant case belongs, is invulnerable. (*People* v. *Pera,* 36 Cal. App. 292, 304 [171 Pac. 1091]; *People* v. *Tomasovich,* 56 Cal. App. 520, 532 [206 Pac. 119]; *Commonwealth* v. *Holstine,* 132 Pa. St. 357 [19 Atl. 273].)

Some of the other given instructions are assailed on the ground that there is no law in California affording a basis for the charge set forth in the information. As shown, the same proposition constituted the foundation for the attack against the information first hereinabove considered, and, as seen, we held that it is untenable. It is deemed unnecessary to specially consider herein the complaint against the action of the court in disallowing a number of instructions preferred by the defendants. It is enough to say that the court's charge to the jury contains a full and correct statement of every principle of law applicable to the issues of the case, and covers every pertinent principle which the defendants sought to have stated to the jury in the instructions submitted by them and rejected by the court.

The judgment and the order as to each of the appealing defendants are affirmed.

Plummer, J., and Finch, P. J., concurred.